May it please the court, my name is Stuart Filinski, I represent Natalia Strokous who is present in court today, and sitting with me at counsel table is Howard Hom, who is attorney on the related case of Ganocho and has been of able assistance to me. Counsel, let me just ask you a question that concerns me. One of the reasons why the petitioner's application was rejected was that it did not include a supporting affidavit from an immediate relative citizen. Is that a valid basis for rejection, and if not, why not? We contend that it is not, because by section 213A, no parenthesis, affidavit of support is required from family petitioners under section 203. And there's no immigrant visa petition in part 203 and 204 of the act, and the K scheme does not require an immigrant visa petition at all. It's a nonimmigrant, therefore it's not required, and also that as part of the K visa process overseas, an affidavit of support on the form I-134 must be submitted. So if section 245 applies, would that not be a defect? Well, the requirement for the I-864 relates back to, again, an immigrant visa petition, you know, and doesn't deal with section 245. And also I would submit that the requirement for an I-864 would then just moot out the joint case, because the petitioning husband in that, they're no longer married. He wasn't involved in the case. But he did petition. What? He did petition. He petitioned under section 245. But the marriage came after he had submitted the necessary affidavit. I'm talking about the K petition. And if you're talking about the subsequent spouse, in this particular case, we do have a subsequent spouse who's a U.S. citizen. Marriage still exists. In fact, the spouse is also in court today. So if this court was to hold that a petitioning U.S. citizen husband of the current marriage can do it, we have that in this case. Now, I don't really care to repeat my argument, other than for the fact that what I think we have here is we have a false premise, which the government's supplemental brief has actually drawn my attention to. It was in the legislative history and the 1986 letter to Congress from Mr. Bolton. And unfortunately, that false premise has turned into an article of faith. And, you know, I have been litigating this around the country, not just here, although this case is now on a second impression, it appears. And I've had absolutely no response to that article of faith, not even to contest it, it's just ignored. I will say that I have had one response in an immigration case recently, which was a K-2 age-out, like the next case. The immigration judge based his decision on CHOIN, but rejected, you know, my article of faith argument, simply because of those three lines in CHOIN. And but he said even under CHOIN, the gentleman was eligible. And that takes us to the legislative history. And that is the first time that you see that phrase, the former automatic procedure. It wasn't automatic. And also in that legislative history, you know, Mr. Bolton, he acknowledges that he calls it an apparent discrepancy, which had to be reconciled. But they asked Congress, wait a second, you apparently said a K can't adjust under 245. Please eliminate that. Congress did not. So what we have here is Congress, you know, affirmed part of Dixon in saying it's not under 245. They said it expressly. They also took away the former procedure under 214D. We have no dispute on that. So Congress, what they did is they stripped the former INS of jurisdiction to make an adjudication. They could adjudicate the visa petition. The consul could adjudicate the visa application. The former INS could decide whether to allow the person in at the airport, which is an inspection. And then if they got married within 90 days, it was by operation of law, because they had no jurisdiction. I would submit, just like the farmworker legislation passed at the same time, the normal procedure was, you get married, go in, file the application for issuance of a green card, form I-90. But that would not be the end of it, because immigration would get a further shot two years later. And that is compelled by the plain language of the statute and does not do violence to any other section of the law, particularly to the 245A. Thank you, counsel. You have about three minutes. Did you want to save some time? Yes, I would. And if there are no further questions, I would reserve the remainder. There don't seem to be. Thank you. Thank you. We'll hear from the government. Thank you. May it please the Court. My name is Colette Winston. I represent the Attorney General in this case. I would like to address the exact issue in this case. And that is step three as elucidated in Troin. Now, step one and step two were done by Ms. Strokus. She got a visa petition through her first U.S. citizen husband, and she arrived in the United States. She got married within the 90 days. So all was well. Step one was met. Step two was met. Where Ms. Troin and Ms. Strokus part ways is that Ms. Troin duly filed her adjustment of application form while she was still married. Ms. Strokus, on the other hand, filed her application for adjustment after she was divorced. Counsel, I think that's one of the arguments that you make in the supplemental brief. And my question is, how is it that Ms. Strokus filed her adjustment of application form after she was divorced? And how is it that we can possibly rule on that? Because that was not the argument that you made to the agency. That was not the basis of the decision below. So under Ventura, how can we make a decision on that ground? Well, the decision below, the board's decision dated May 10th of 2006, found that the, it said, we do not find that the immigration judge erred in his own decision. So the board agreed with the ultimate conclusion that the respondent is ineligible for adjustment of status under 245 of the INA. So the board agreed with the ultimate conclusion of the immigration judge, possibly not the reasoning of the immigration judge. But even the BIA was not responding to the argument that you're making now because you didn't make it. I mean, you were making, as I understand it, the arguments that were rejected in Troin. Well, we made that argument in our brief as well, even before Troin came out. The government's brief stated several times in the brief that she filed her adjustment of application status after she was already divorced. So she had no status to adjust. I'm sorry. Was that argued to the BIA? Okay. I don't really recall what the, the argument to the BIA, one of the arguments was the 214D argument, the supporting affidavit argument. And the board did not address that. So although with your prior question to Petitioner's Counsel, it was a correct ground, the board did not rule on that ground. So under Ventura, this court, that would be going outside of the bounds of the board's decision. But as far as the argument made to the board, I'm not sure whether it was argued to the board or not. It might be in the record. Let me put the same question in a somewhat different way. Whatever arguments were made to the board in terms of an agency interpretation, all we have is what the board ruled. Exactly. And as I look at that, I mean, there's a timing problem here. Choyne comes out subsequent to this. So obviously the BIA can't be speaking to Choyne. And I had the same impression that Judge Graber mentioned that the BIA in its decision in this case appeared to adopt an interpretation which our court has now said in Choyne is improper. Now there may be distinctions that can be drawn, but those weren't distinctions the board had to draw at the time because they weren't operating in the face of Choyne. Choyne came later. So the problem we have now is, as I read the BIA, if my colleagues have the same reading, it looks like it's, events have gone past it because Choyne has come out subsequently and the argument you're trying to make is not one that we should entertain in the first place because we're told by Ventura to let the agency make those decisions in the first instance. So I feel sort of trapped here. I hear your argument. I understand the distinction. I don't think I can do anything about it. But I feel that one could look at it in a slightly different way and look at it to say that the board's decision kind of broadly stated that the ultimate conclusion, quote, unquote, that this petitioner is ineligible for adjustment of status under 245D would sweep it in. I assume we got to the merits. What differences does it make that she filed after the divorce? She had no status to adjust. She filed just before in anticipation of the divorce. And isn't the whole premise here the concern about fraudulent marriage? And they still can make an inquiry. And obviously, this would be a factor in determining whether the first marriage was fraudulent. But I don't understand why the date should make a difference. I suppose the date makes a difference if you look at the congressional intent of the marriage fraud amendments. And both of those amendments, I think, make a difference. Because before the marriage fraud amendments were passed, the petitioner or the applicant didn't have to file an adjustment of status application. It was automatic. But they're trying to make the process a little more difficult to ferret out the fraud that could happen when someone comes to marry a U.S. citizen. And in doing so, they then made the requirement for an adjustment of status application go from being automatic, I mean, from the status being automatic to being automatic. To someone having to file a petition. And by filing a petition, that person is placed in the same position as any ordinary person that comes into this country who wants adjustment of status. They have to qualify. They have to have an immediate relative available. And an immediate relative could be a spouse. But if the person's already divorced, there's no spouse. Well, that's an attack on the CHOIN decision. But once CHOIN is there, I don't know what the difference is between when they file. You still have a right to a hearing, I mean, to an investigation. And you have a hearing and determine whether the first marriage was a phony attempt to get into the country. But Ms. Drokos never gets that far because she didn't file her adjustment application while she was married, unlike Ms. CHOIN, who did file her adjustment application while she was married. And the application languished in the file cabinets of the agency. And that's why Judge Pregerson, in his rationale in CHOIN, said that the petitioner shouldn't be penalized by virtue of the fact that the adjustment application languished in the agency's file cabinets, and the agency dragged its feet. Now, let's look at this case. In this case, it was Ms. Drokos who dragged her feet. It wasn't the agency who dragged their feet. Ms. CHOIN became divorced during the pendency of the petition. It was Ms. Drokos who became divorced during the pendency of her adjustment of status application. Ms. Drokos became divorced before she even filed her adjustment application. So the court never got out of the state. As a legal matter, you're saying it's as if she were never married. As if she were never married. And she filed. Right. She was not married when she filed. She had no status to adjust to. Well, they haven't yet, because as Your Honor pointed out, the CHOIN decision wasn't even issued yet, and neither was Genocchio. Those were all issued after the board decision. But my position is that Ventura is not necessarily applicable here, because the board's decision used such a broad paintbrush to say we agree with the ultimate conclusion. Well, the ultimate, I'm arguing the ultimate conclusion here. And if you look at CHOIN, which came after the board decision, that Ms. Drokos filed her adjustment application too late after her divorce. How would your argument apply in the case not of divorce, but of death? Suppose there had been a marriage that nobody could question legitimacy of, and two months later, the husband is killed in a car crash.  Well, if he had filed the adjustment, he might even have signed it, but it wasn't turned in yet, you'd say that's it. End of game? End of game. Because the relevant date is the date of filing. That's a hard decision for me to take away from the agency. I mean, maybe the agency could rule like that. And I understand the bottom line of the agency's decision here is a broad brush, but that broad brush would paint over CHOIN if we took it in its main thrust. Obviously, it can't. But the point is there is some, I think you'd have to at least acknowledge some tension between the agency's decision in this case and CHOIN. And if they're not truly compatible, I think it's up to the agency to say how they fit together or how it is the agency reaches the same result in the face of CHOIN. So although, again, I understand your distinction, I'm just not sure how we're supposed to act on that. I suppose because the board just dealt with the ultimate conclusion. And even though, yes, they did raise the same section as this Court did in CHOIN, the ultimate conclusion remains the same. Even taking CHOIN into consideration, our position today doesn't fly in the face of CHOIN. It goes right along with CHOIN, and there's a factual distinction between the CHOIN case and this case that mandates an opposite result. Because Ms. CHOIN's application was pending, and then she divorced. It's as though Ms. CHOIN's application was pending and her husband died. She wouldn't have been, shouldn't have been penalized for that. So I see that my time is up. Thank you, counsel. We understand your position. First of all, I'd like to direct the Court's attention to page 13 of the administrative record, where with some prescient, Ms. Gamborian anticipated CHOIN. Section 245D provides an important part. The Attorney General may not adjust under subsection A, so on, except to an alien on a lawful, you know, as a conditional resident under section 216. She adds the emphasis, as the result of the marriage of the nonimmigrant to the citizen who filed the petition to accord the alien's nonimmigrant status under 101A15K. So in essence, CHOIN was argued to the board, just not by name, because as was pointed out, it wasn't there. And what the board did, somehow they converted it into an argument that Ms. Strokis was filing based upon Alex. And we have no idea where that came from, because it was always argued. She was filing based upon the marriage divorce. As to Judge Clifton's question about one day, the opening brief does cite to Matter of Blair, which is in 1972, which is the first published decision on the K provision. The marriage lasted one day. Mr. Blair was in the military and was killed in a plane crash the day after the wedding. And, you know, this was, you know, the position of the then INS. The board later rejected in Harris, then later came to it in Dixon and Dawson, and I would submit there is absolutely no language in the statute that states that the short time of the marriage, or even if the person died right after the marriage, this person was out of luck. And with that, Your Honor, I'm willing to submit. Thank you, counsel. We appreciate very much the arguments of both counsel, and the case just argued is submitted, and also we did get all of your 28J materials, just to make that clear. The next case and the final case for this morning's calendar is Jung v. Still.
judges: Graber, Clifton, Trager